**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X    **Docket No.: 1:25-cv-3990**
DORIS ELLIS,

                                        Plaintiff,

                                                                       **COMPLAINT**

        - against -

LOGAN BUS CO., INC., ANNA "DOE" (last name          **PLAINTIFF DEMANDS**
unknown), *In Her Individual and Official Capacities,*   **A TRIAL BY JURY**
MILDRED "DOE" (last name unknown), *In Her*
*Individual and Official Capacities,* LISA "DOE" (last
name unknown), *In Her Individual and Official*
*Capacities,* JOHN "DOE" (last name unknown), *In His*
*Individual and Official Capacities,*

                                        Defendants.
-------------------------------------------------------------------X

        PLAINTIFF DORIS ELLIS, by and through her attorneys, PHILLIPS & ASSOCIATES,

Attorneys at Law, PLLC, hereby complains of DEFENDANTS, and alleges, upon information and

belief, as follows:

<u>**NATURE OF THE CASE**</u>

1.      PLAINTIFF complains pursuant to the <u>Americans with Disabilities Act of 1990</u>, <u>42 U.S.C</u>.

        §§ 12101, *et seq*. ("ADA"); <u>Family Medical Leave Act</u> ("FMLA"); <u>New York State Human</u>

        <u>Rights Law</u>, <u>New York State Executive Law</u> §§ 296, *et seq*. ("NYSHRL"); and <u>New York</u>

        <u>City Human Rights Law</u>, <u>New York City Administrative Code</u> §§ 8-107, *et seq*.

        ("NYCHRL"), and seeks damages to redress the injuries PLAINTIFF has suffered as a

        result of being **discriminated against** by DEFENDANTS solely due to her

        **disability/disabilities, whether actual and/or perceived**, and then **retaliated against**

        (including wrongful termination) by her employer, as well as **interfered with her rights**

        **under the FMLA**.

2.      On July 4, 2022, PLAINTIFF was hired as a Bus Operator by DEFENDANT LOGAN

                                        1

BUS CO., INC. ("DEFENDANT LOGAN"), which provides transportation services for school districts in New York City.

3. PLAINTIFF is diagnosed with Mitral Valve Prolapse, a condition that PLAINTIFF was diagnosed with as a child and that remained dormant for years. Mitral Valve Prolapse is a type of heart valve disease that affects the valve between the left heart chambers that is exacerbated by undue stress. Despite this diagnosis, PLAINTIFF worked without issue until May of 2024.

4. On or around April 2024, while PLAINTIFF was driving her regular bus route to pick up children for school, a parent of a couple of the children that PLAINTIFF transported threatened to shoot someone due to frustration at her children's bus schedule.

5. This threat caused PLAINTIFF significant terror and fear of death.

6. PLAINTIFF filed reports with DEFENDANT LOGAN and the police department the same day and was advised by the police officers and her supervisor, DEFENDANT ANNA "DOE" ("DEFENDANT ANNA"), that PLAINTIFF no longer had to transport the children of that particular parent.

7. However, two weeks later, on or about May 7, 2024, and while PLAINTIFF was in the middle of her route, she was advised by DEFENDANT ANNA, that she in fact did need to transport the children of that particular parent.

8. PLAINTIFF communicated with DEFENDANT ANNA that it was not right and that she feared for her safety, but DEFENDANT ANNA insisted that she conduct the pickup moving forward.

9. Eventually, DEFENDANT ANNA told PLAINTIFF that she was no longer scheduled to drive on that route, but that PLAINTIFF should report to the office to speak with

2

DEFENDANT JOHN, who was PLAINTIFF'S Supervisor.

10. After speaking with DEFENDANT ANNA, PLAINTIFF began to feel very light headed. As PLAINTIFF continued to complete her route and made her way back to the depot to meet with DEFENDANT JOHN "DOE" ("DEFENDANT JOHN"), PLAINTIFF'S symptoms grew worse and she experienced panic, stress, heart palpitations, and severe pain in her head and chest.

11. PLAINTIFF then reached out to DEFENDANT LISA "DOE" ("DEFENDANT LISA") and advised her that she was having a medical emergency and was going to the emergency room. PLAINTIFF also advised DEFENDANT LISA that she could not make it to the meeting with DEFENDANT JOHN.

12. PLAINTIFF received a series of texts from DEFENDANT LISA throughout this exchange.

13. PLAINTIFF was admitted to the hospital and held overnight for observation but had to return to the hospital on subsequent days as she was still experiencing symptoms and pain due to her disability.

14. As a result of these circumstances stemming from her employment, PLAINTIFF experienced dangerously high blood pressure, heart palpitations, severe chest pains, and numbness, which caused her significant difficulty in focusing and performing daily functions.

15. PLAINTIFF advised DEFENDANT LISA that she had been admitted to the hospital and asked that DEFENDANT LISA advise DEFENDANT MILDRED "DOE" ("DEFENDANT MILDRED") of same, as PLAINTIFF could not get in touch with her.

16. PLAINTIFF received no response from either DEFENDANT LISA or her supervisors.

17. Over the course of two weeks, PLAINTIFF continued to contact DEFENDANT LISA to

3

provide updates on her condition and PLAINTIFF'S need to remain on leave, because PLAINTIFF could not reach DEFENDANT MILDRED. However, PLAINTIFF still did not receive any response.

18. Thereafter, PLAINTIFF returned to work on or about May 22, 2024, and attempted to speak with DEFENDANT JOHN. When PLAINTIFF noticed that DEFENDANT JOHN was busy, PLAINTIFF then went to DEFENDANT MILDRED'S office and handed her PLAINTIFF'S doctor's note, clearing her to go back to work. However, DEFENDANT MILDRED advised PLAINTIFF that her doctor's note was insufficient and told her that it needed to specifically state that she is able to go back to work without any restrictions.

19. DEFENDANT MILDRED treated PLAINTIFF with surprising hostility through her tone of voice and mannerisms.

20. Due to the stress and hostility of the conversation with DEFENDANT MILDRED, PLAINTIFF suffered another incident of severe heart palpitations, as well as chest and head pains.

21. PLAINTIFF immediately went to the emergency room that same day, where they kept her overnight again.

22. PLAINTIFF attempted to call COLLECTIVE DEFENDANTS to notify them about her hospital admission and need for additional medical leave, but no one answered the phone.

23. Thereafter, COLLECTIVE DEFENDANTS purportedly sent a letter dated May 23, 2024, a day after PLAINTIFF was admitted to the hospital, which claimed that they did not hear from PLAINTIFF since May 6, 2024, and that if they did not hear from her within 48 hours, she would be terminated from her position.

24. This letter was false, as PLAINTIFF was physically present in the COLLECTIVE

4

DEFENDANTS' offices with a doctor's note on May 22, 2024, and exchanged several text messages with DEFENDANT LISA throughout the course of her leave.

25. PLAINTIFF continued to receive medical treatment and has since been in and out of the hospital due to her heart condition. PLAINTIFF also kept trying to contact COLLECTIVE DEFENDANTS, but no one picked up and PLAINTIFF received no response.

26. Thereafter, on or about June 14, 2024, PLAINTIFF received a letter terminating her employment with DEFENDANT LOGAN. The letter indicated that PLAINTIFF was terminated because she was "discharged".

27. At no time did DEFENDANT LOGAN engage in the interactive process with PLAINTIFF to determine whether there were any accommodations that could be made for PLAINTIFF

28. At no time did DEFENDANT LOGAN advise PLAINTIFF of her rights pursuant to FMLA.

29. COLLECTIVE DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities, her need for an accommodation, and PLAINTIFF'S need of an FMLA-eligible leave.

30. PLAINTIFF is aware of several similarly situated non-disabled drivers, who had issues with parents on their routes, and were permitted to remove them from their transport schedule without such hostility or retaliation.

31. To make matters worse, when PLAINTIFF needed further medical treatment, LOGAN DEFENDANTS refused to accommodate PLAINTIFF and promptly terminated her, when she needed her employment, income, and health insurance the most - in violation of PLAINTIFF'S various rights as outlined below.

32. PLAINTIFF brings this action charging that the COLLECTIVE DEFENDANTS,

collectively and individually, wrongfully subjected PLAINTIFF to discrimination and retaliation on the basis of her **Disability/Perceived Disability, whether actual or perceived** and/or history of disability.

## JURISDICTION, VENUE, AND PROCEDURAL PREREQUISITES

33. Jurisdiction of this Court is proper under 42 U.S.C. §§ 12101, *et seq*., and 28 U.S.C. §§ 1331 and 1343.

34. The Court has supplemental jurisdiction over the claims that PLAINTIFF has brought under State and City law pursuant to 28 U.S.C. § 1367.

35. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as one or more DEFENDANTS reside within the Eastern District of New York, or the acts complained of occurred therein.

36. By: (a) timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 20, 2025; (b) receiving a Notice of Right to Sue from the EEOC on April 18, 2025; and (c) commencing this action within 90 days of the issuance of the Notice of Right to Sue by the EEOC, PLAINTIFF has satisfied all of the procedural prerequisites for the commencement of the instant action.

37. A copy of the Notice of Right to Sue is annexed hereto as Exhibit A.

## PARTIES

38. **PLAINTIFF DORIS ELLIS ("PLAINTIFF")** is a resident of the State of New York, Kings County.

39. At all relevant times, PLAINTIFF was employed with DEFENDANT LOGAN BUS CO., INC. ("DEFENDANT LOGAN") as a "Bus Operator" at the location of 97-14 Atlantic Avenue, Ozone Park, New York 11416.

40.   At all relevant times, PLAINTIFF suffers from Mitral Valve Prolapse, a condition that PLAINTIFF was diagnosed with as a child and remained dormant for years. Mitral Valve Prolapse is a type of heart valve disease that affects the valve between the left heart chambers that is exacerbated by undue stress. As a result of circumstances stemming from her employment, PLAINTIFF experienced dangerously high blood pressure, heart palpitations, severe chest pains, and numbness, which caused her significant difficulty in focusing and performing daily functions.

41.   PLAINTIFF'S condition is a recognized disability under state and federal law.

42.   **DEFENDANT LOGAN BUS CO., INC. (hereinafter "DEFENDANT LOGAN")** is a domestic company which is headquartered on 97-14 Atlantic Avenue, Ozone Park, New York 11416.

43.   Upon information and belief, DEFENDANT LOGAN is a school bus company and employs more than 15 employees.

44.   **DEFENDANT ANNA "DOE" (last name unknown) (hereinafter "DEFENDANT ANNA")** is employed as a Manager and Supervisor at DEFENDANT LOGAN and has the authority to hire, fire, or affect the terms and conditions of PLAINTIFF'S employment, or to otherwise influence the decision-maker of the same. DEFENDANT ANNA is being sued herein in her individual and official capacities.

45.   **DEFENDANT MILDRED "DOE" (last name unknown) (hereinafter "DEFENDANT MILDRED")** is employed, upon information and belief, in the Human Resources Department as a supervisor for DEFENDANT LOGAN. DEFENDANT MILDRED has the authority to hire, fire, or affect the terms and conditions of PLAINTIFF'S employment, or to otherwise influence the decision-maker of the same. DEFENDANT MILDRED is

7

being sued herein in her individual and official capacities.

46. **DEFENDANT LISA "DOE" (last name unknown) (hereinafter "DEFENDANT LISA")** is employed, upon information and belief, as a Dispatcher for DEFENDANT LOGAN. DEFENDANT LISA has ability to otherwise influence the decision-maker of the same. DEFENDANT LISA is being sued herein in her individual and official capacities.

47. **DEFENDANT JOHN "DOE" (last name unknown) (hereinafter "DEFENDANT JOHN")** is employed, upon information and belief, as a Supervisor at DEFENDANT LOGAN and has the authority to hire, fire, or affect the terms and conditions of PLAINTIFF'S employment, or to otherwise influence the decision-maker of the same. DEFENDANT JOHN is being sued herein in his individual and official capacities.

48. **DEFENDANTS ANNA, MILDRED, LISA, and JOHN** are collectively referred to as **"INDIVIDUAL DEFENDANTS"**.

49. **DEFENDANTS LOGAN, ANNA, MILDRED, LISA, and JOHN** are collectively known as **"LOGAN DEFENDANTS"** or **"COLLECTIVE DEFENDANTS"**.

## MATERIAL FACTS

50. On July 4, 2022, PLAINTIFF was hired as a Bus Operator by DEFENDANT LOGAN, which provides transportation services for school districts in New York City.

51. PLAINTIFF worked full time and worked approximately 40 hours per week. PLAINTIFF was earning approximately $19 an hour. Thereafter, in September 2023, PLAINTIFF received a raise, and her hourly wage changed to approximately $19.60 an hour.

52. At all relevant times, PLAINTIFF was primarily scheduled to drive a school bus route in Brooklyn, NY.

53. At all times relevant hereto, PLAINTIFF was qualified for her position and to perform the

8

duties of her employment.

54. At all relevant times, PLAINTIFF was diagnosed with Mitral Valve Prolapse, a condition that PLAINTIFF was diagnosed with as a child and that remained dormant for years. Mitral Valve Prolapse is a type of heart valve disease that affects the valve between the left heart chambers that is exacerbated by undue stress. Despite this diagnosis, PLAINTIFF worked without issue and without need for accommodation until May of 2024.

55. Upon information and belief, DEFENDANT LOGAN has certain policies and procedures that it adheres to, including those related to the bus routes that Bus Operators drive on, and the number of children each Bus Operator picks up.

56. At the beginning of each school year, from September through June, each Bus Operator received a set bus route that dictates what addresses to stop at, and how many children are supposed to be picked up at each stop. This also dictates how many children should be on each bus. Each Bus Operator also has an assistant known as a Matron with them in their bus, who assists the Bus Operators with making sure the children get on the buses safely and in a timely fashion.

57. Any deviations to that schedule would be put in a centralized box for the Bus Operators, which was located at DEFENDANT LOGAN'S office. The Bus Operators were also required to check their respective boxes every morning before departing on their route to verify if there were any changes that they should expect.

58. In or around April 2024, PLAINTIFF departed on her normal scheduled bus route after checking that there were no deviations to her normal bus schedule.

59. Thereafter, after stopping at one of the scheduled pick-up locations, an issue arose with the pick-up of a couple of the children that PLAINTIFF transported. Specifically, one of the

parent's children was not scheduled to be transported on PLAINTIFF'S bus, while her other two children were, which complicated mornings for the parent.

60.    While PLAINTIFF would happily have taken the third child, she was strictly limited to picking up the specific children as dictated on her scheduled route, at designated times and locations. PLAINTIFF also advised the parent of this fact and advised that the parent should call DEFENDANT LOGAN to sort out the issue.

61.    Frustrated, the irate parent threatened to ***"shoot somebody"*** due to frustration that her third child could not go on the bus.

62.    This threat caused PLAINTIFF significant terror and fear of her safety and/or death.

63.    After PLAINTIFF finished her route, PLAINTIFF returned to DEFENDANT LOGAN'S location and immediately called the police. PLAINTIFF then filed reports with DEFENDANT LOGAN and the police department and was advised by DEFENDANT ANNA and the police officers that she no longer had to transport the children for that parent.

64.    Upon information and belief, DEFENDANT ANNA also filled out a form with details of the situation and sent it to the Board of Education on the same day.

65.    Thereafter, PLAINTIFF continued working at DEFENDANT LOGAN without issue.

66.    However, two weeks later, on or about May 7, 2024, and while PLAINTIFF was in the middle of her route, she was advised by DEFENDANT ANNA that she needed to transport the children of the parent that made the initial threat.

67.    Shocked at the sudden change, PLAINTIFF responded with ***"But we made a police report. It was determined that we weren't going to pick up those students anymore."*** However, DEFENDANT ANNA simply stated that ***"the school wants you to pick them up because***

*the school wants them to be in school."*

68.    PLAINTIFF again insisted that it was not right because she was the one who made the police report against the parent, and that she was afraid of the parent.

69.    Eventually, DEFENDANT ANNA conceded that PLAINTIFF did not need to pick up those children that day but would have to do so going forward. Additionally, DEFENDANT ANNA told PLAINTIFF that she should report to the office to speak with DEFENDANT JOHN, who was PLAINTIFF'S Supervisor.

70.    After speaking with DEFENDANT ANNA, PLAINTIFF began to feel very light headed. As PLAINTIFF continued to complete her route and made her way back to the depot to meet with DEFENDANT JOHN, PLAINTIFF'S symptoms grew worse and she experienced panic, stress, heart palpitations, and severe pain in her head and chest.

71.    Upon information and belief, part of DEFENDANT LOGAN'S protocol is that if a driver is feeling unwell, they must inform their Matron. Upon doing so, the Matron is supposed to return to DEFENDANT LOGAN'S office and inform DEFENDANTS that the Matron will need a driver.

72.    As such, PLAINTIFF alerted her Matron that she was not feeling well and would not be returning for the afternoon route because she was going to the hospital. PLAINTIFF, who did not have the contact information for DEFENDANT ANNA, also advised DEFENDANT LISA that she was having a medical emergency and was going to the emergency room, and would not be back for the afternoon. She also stated that she had let her Matron know to notify DEFENDANT ANNA of what was going on.

73.    PLAINTIFF received a series of texts from DEFENDANT LISA throughout this exchange. Specifically, after DEFENDANT LISA again asked if PLAINTIFF would be working that

11

afternoon and PLAINTIFF reiterated that her Matron was aware of what was happening, DEFENDANT LISA stated, *"You told your matron what? I'm asking if you're coming in this afternoon. You work for the company not your matron. You have to communicate with Mildred. Let me know if you're coming in this afternoon. Thank you."* Later during that same morning, DEFENDANT LISA sent a message to PLAINTIFF stating that *"John is waiting to hear from you"*, even after PLAINTIFF had responded to her at least 4 times stating that she was sick and was heading to the hospital.

74. PLAINTIFF was admitted to the hospital and held overnight for observation. It was later determined that the symptoms were due to PLAINTIFF'S heart condition/disability.

75. PLAINTIFF'S condition is a recognized disability under state and federal law.

76. PLAINTIFF had to return to the hospital on subsequent days as she was still experiencing symptoms and pain due to her diagnosis.

77. Thereafter, on or about May 13, 2024, PLAINTIFF advised DEFENDANT LISA that she had been admitted to the hospital for a few days, and asked that DEFENDANT LISA advise DEFENDANT MILDRED of same, as PLAINTIFF could not get in touch with her.

78. However, PLAINTIFF received no response from either DEFENDANT LISA or her supervisors.

79. Over the course of two weeks, PLAINTIFF continued to contact DEFENDANT LISA to provide updates on her condition and PLAINTIFF'S need to remain on leave, because PLAINTIFF could not reach DEFENDANT MILDRED. However, PLAINTIFF still did not receive any response.

80. Thereafter, PLAINTIFF returned to work on or about May 22, 2024, and attempted to speak with DEFENDANT JOHN. PLAINTIFF knocked at his door for several minutes,

12

but DEFENDANT JOHN did not respond.

81. PLAINTIFF then went to DEFENDANT MILDRED'S office and handed her PLAINTIFF'S doctor's note, clearing her to go back to work. However, DEFENDANT MILDRED advised PLAINTIFF that her doctor's note was insufficient and told her that it needed to specifically state that she is able to go back to work without any restrictions.

82. DEFENDANT MILDRED treated PLAINTIFF with surprising hostility through her tone of voice and mannerisms.

83. Due to the stress and hostility of the conversation with DEFENDANT MILDRED, PLAINTIFF suffered another incident of severe heart palpitations, as well as chest and head pains.

84. PLAINTIFF immediately went to the emergency room that same day, where they kept her overnight again.

85. PLAINTIFF attempted to call COLLECTIVE DEFENDANTS to notify them about her hospital admission and need for additional medical leave, but no one answered the phone.

86. Thereafter, COLLECTIVE DEFENDANTS purportedly sent a letter dated May 23, 2024, a day after PLAINTIFF was admitted to the hospital, in which they claimed to have not heard from PLAINTIFF since May 6, 2024, and that if they did not hear from her within 48 hours, she would be terminated from her position.

87. This letter was false, as PLAINTIFF was physically present in the COLLECTIVE DEFENDANTS' offices with a doctor's note on May 22, 2024, and exchanged several text messages with DEFENDANT LISA throughout the course of her leave.

88. PLAINTIFF continued to receive medical treatment and has since been in and out of the hospital due to her heart condition. PLAINTIFF also kept trying to contact COLLECTIVE

13

DEFENDANTS, but no one picked up and PLAINTIFF received no response.

89. Thereafter, on or about June 14, 2024, PLAINTIFF received a letter terminating her employment with DEFENDANT LOGAN. The letter indicated that PLAINTIFF was terminated because she was "discharged".

90. The excuse given to PLAINTIFF for her termination was pretextual.

91. LOGAN DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities, her need for an accommodation, and PLAINTIFF'S exercise of an FMLA-eligible leave.

92. LOGAN DEFENDANTS callously discriminated and retaliated against PLAINTIFF, and wrongfully terminated her due to her disability/disabilities, whether actual and/or perceived, while PLAINTIFF was out during an unforeseen medical leave, in violation of Federal, State, and City laws.

93. PLAINTIFF clearly communicated to LOGAN DEFENDANTS of her need for leave and her request for accommodation, and made DEFENDANT LOGAN aware of her circumstances, which qualified for FMLA protections.

94. LOGAN DEFENDANTS did not advise PLAINTIFF of her rights pursuant to FMLA nor advise that she might be eligible for a leave pursuant to FMLA.

95. PLAINTIFF specifically advised LOGAN DEFENDANTS of her need for leave to care for herself and as treatment for her ongoing disability and medical emergency.

96. PLAINTIFF could have been accommodated through FMLA leave.

97. LOGAN DEFENDANTS, after having been provided with reasonable notice, knew or should have known that PLAINTIFF should have been afforded and advised of her rights under the FMLA.

14

98. Once PLAINTIFF advised LOGAN DEFENDANTS of an FMLA-eligible condition, LOGAN DEFENDANTS immediately sought to interfere with, or retaliate against, PLAINTIFF'S.

99. LOGAN DEFENDANTS failed/refused to inform or offer FMLA to PLAINTIFF and interfered with PLAINTIFF'S rights under the FMLA.

100. In addition, LOGAN DEFENDANTS failed/refused to provide general information about the FMLA to PLAINTIFF.

101. LOGAN DEFENDANTS failed/refused to inform PLAINTIFF about her eligibility for FMLA leave or the reason(s) that she was ineligible (if any).

102. LOGAN DEFENDANTS failed/refused to advise PLAINTIFF about her rights and responsibilities under the law.

103. Upon information and belief, LOGAN DEFENDANTS could have allowed PLAINTIFF to properly exercise FMLA leave.

104. Instead, LOGAN DEFENDANTS wrongfully terminated PLAINTIFF while she was on an FMLA-eligible leave, in retaliation and/or in furtherance of their discriminatory purposes as per the FMLA.

105. LOGAN DEFENDANTS never engaged in any meaningful interactive process with PLAINTIFF to determine whether PLAINTIFF could have received an accommodation.

106. PLAINTIFF could have been accommodated through a short medical leave, or through the original accommodation of not having to transport the children of the parent who threatened to shoot someone.

107. Instead, LOGAN DEFENDANTS did the exact opposite and placed PLAINTIFF back on the same route of the threatening parent, thus putting PLAINTIFF at great risk of harm,

15

and made PLAINTIFF fear for her safety and/or life while exacerbating PLAINTIFF'S disability.

108. LOGAN DEFENDANTS had no good faith business justification for the actions taken against PLAINTIFF herein.

109. PLAINTIFF'S accommodation requests resulted in an adverse action, and she was ultimately discharged due to her disabilities and/or after DEFENDANTS were placed on notice that PLAINTIFF had an <u>FMLA</u> qualifying condition.

110. LOGAN DEFENDANTS' wrongful termination of PLAINTIFF was motivated by their intent to discriminate against PLAINTIFF and interfere with PLAINTIFF'S rights.

111. LOGAN DEFENDANTS' conduct was a **<u>continuing violation</u>** of PLAINTIFF'S rights.

112. As a result of LOGAN DEFENDANTS' actions, PLAINTIFF was humiliated, degraded, victimized, embarrassed, and emotionally distressed.

113. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of employment, and other compensation which such employment entails. PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

114. LOGAN DEFENDANTS' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law. As such, punitive damages as against LOGAN DEFENDANTS are appropriate.

### AS A FIRST CAUSE OF ACTION FOR *DISCRIMINATION* <u>UNDER THE AMERICANS WITH DISABILITIES ACT</u> *(Against DEFENDANT LOGAN)*

16

115. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

116. Title 42 of the Americans with Disabilities Act of 1990, Chapter 126, Subchapter I, Section 12112, Discrimination [Section 102] states: "(a) General rule. - No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."

117. PLAINTIFF had a qualifying disability.

118. Plaintiff was qualified to perform her duties with an appropriate workplace accommodation.

119. DEFENDANT LOGAN did not subject non-disabled employees to the same or similar hostility or harassment.

120. But for PLAINTIFF'S disabilities and PLAINTIFF'S FMLA qualifying condition, DEFENDANT LOGAN would not have terminated PLAINTIFF'S employment.

121. COLLECTIVE DEFENDANTS refused to engage in a meaningful discussion with PLAINTIFF.

122. After PLAINTIFF notified COLLECTIVE DEFENDANTS of her disability and of her hospitalization, COLLECTIVE DEFENDANTS terminated PLAINTIFF.

123. COLLECTIVE DEFENDANTS were aware of their obligations to stop, prevent, investigate, and correct discriminatory practices against PLAINTIFF.

124. Most certainly, COLLECTIVE DEFENDANTS were aware of their obligations to engage in an interactive process and to assess whether they could accommodate PLAINTIFF.

125. DEFENDANT LOGAN refused to accommodate PLAINTIFF and declined to engage in

17

the interactive process.

126. COLLECTIVE DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities and/or having a FMLA qualifying condition.

127. DEFENDANT LOGAN had no good-faith business justification to terminate PLAINTIFF.

128. DEFENDANT LOGAN is vicariously liable for the actions alleged herein as all INDIVIDUAL DEFENDANTS were acting within the scope of their authority as an officer, agent, manager, supervisor, or representative of DEFENDANT LOGAN.

129. COLLECTIVE DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of her disabilities.

130. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails. PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

131. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

**AS A SECOND CAUSE OF ACTION FOR *RETALIATION*
UNDER THE AMERICANS WITH DISABILITIES ACT**
***(Against DEFENDANT LOGAN)***

132. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

133. The ADA prohibits retaliation, interference, coercion, or intimidation.

134. 42 U.S.C. § 12203 provides:

  i. Retaliation. No person shall discriminate against any individual because such individual has opposed any act or practice made

18

unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

ii.    Interference, coercion, or intimidation. It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

135.    DEFENDANT LOGAN engaged in an unlawful discriminatory practice by retaliating against PLAINTIFF because of her disabilities and for engaging in protected activity.

136.    Most certainly, INDIVIDUAL DEFENDANTS were aware of their obligations to engage in an interactive process and to assess whether they could accommodate PLAINTIFF.

137.    INDIVIDUAL DEFENDANTS knew or should have known of their obligations to accommodate PLAINTIFF under the ADA.

138.    INDIVIDUAL DEFENDANTS refused to accommodate PLAINTIFF and declined to engage in the interactive process, in accord with their obligations as managers and/or supervisors.

139.    DEFENDANT LOGAN had no good-faith business justification to terminate PLAINTIFF.

140.    But for PLAINTIFF'S disabilities and/or FMLA qualifying condition, DEFENDANT LOGAN would not have terminated PLAINTIFF'S employment.

141.    COLLECTIVE DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities and/or engagement in protected activities.

142.    DEFENDANT LOGAN is vicariously liable for the actions alleged herein as all INDIVIDUAL DEFENDANTS were acting within the scope of their authorities as an officer, agent, manager, supervisor, or representative of DEFENDANT LOGAN.

143.    COLLECTIVE DEFENDANTS engaged in an unlawful discriminatory practice by

19

terminating PLAINTIFF because of her disabilities.

144.    As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails. PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

145.    As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

## AS A THIRD CAUSE OF ACTION FOR *INTERFERENCE / RETALIATION* UNDER THE FAMILY AND MEDICAL LEAVE ACT *(Against DEFENDANT LOGAN)*

146.    PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

147.    Section 2612(d)(2)(B) of the Family Medical Leave Act states in pertinent part: "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee."

148.    Section 2615(a) of the FMLA states in pertinent part:

> Interference with rights. (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter. (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

149.    DEFENDANT LOGAN violated these sections as set forth herein.

150.    PLAINTIFF clearly communicated to LOGAN DEFENDANTS of her need for leave and

made LOGAN DEFENDANTS aware of her circumstances, which qualified for FMLA protections.

151.    PLAINTIFF specifically advised LOGAN DEFENDANTS of her need for leave to care for herself, and to be hospitalized as treatment for her disability.

152.    PLAINTIFF could have been accommodated through FMLA leave.

153.    DEFENDANT LOGAN, after having been provided with reasonable notice, knew or should have known that PLAINTIFF should have been afforded and advised of her rights under the FMLA.

154.    Once PLAINTIFF advised LOGAN DEFENDANTS of her need for an FMLA-eligible leave, LOGAN DEFENDANTS immediately sought to interfere with, or retaliate against, PLAINTIFF'S FMLA rights.

155.    LOGAN DEFENDANTS failed/refused to inform or offer FMLA to PLAINTIFF and interfered with PLAINTIFF'S rights under the FMLA.

156.    In addition, COLLECTIVE DEFENDANTS failed/refused to provide general information about the FMLA to PLAINTIFF.

157.    COLLECTIVE DEFENDANTS failed/refused to inform PLAINTIFF about her eligibility for FMLA leave or the reason(s) that she was ineligible (if any).

158.    COLLECTIVE DEFENDANTS failed/refused to advise PLAINTIFF about her rights and responsibilities under the law.

159.    Upon information and belief, DEFENDANT LOGAN could have allowed PLAINTIFF to properly exercise FMLA leave.

160.    Instead, DEFENDANT LOGAN wrongfully terminated PLAINTIFF while she was out on an FMLA-eligible leave, in retaliation and/or in furtherance of their discriminatory

purposes as per the FMLA.

161. DEFENDANT LOGAN was not concerned with the well-being of their employee, PLAINTIFF. Instead, DEFENDANT LOGAN was aiming to eliminate PLAINTIFF by any means.

162. DEFENDANT LOGAN had no good faith business justification for any of the actions taken against PLAINTIFF as alleged herein.

163. As a result of COLLECTIVE DEFENDANTS' actions, PLAINTIFF was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

164. DEFENDANT LOGAN'S conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.

165. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails. PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

166. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

**AS A FOURTH CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK STATE EXECUTIVE LAW**
*(Against All Defendants)*

167. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

168. The New York State Executive Law § 296(1)(a) provides in pertinent part: "It shall be an unlawful discriminatory practice for an employer . . . because of an individual's . . .

22

disability . . . to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

169. COLLECTIVE DEFENDANTS violated the section cited herein.

170. PLAINTIFF had a qualifying disability.

171. PLAINTIFF was qualified to perform her duties with an appropriate workplace accommodation.

172. But for PLAINTIFF'S  disabilities, COLLECTIVE DEFENDANTS would not have terminated PLAINTIFF'S employment.

173. PLAINTIFF advised COLLECTIVE DEFENDANTS that she had disabilities and/or DEFENDANTS were on notice that PLAINTIFF was in need of an FMLA qualifying leave.

174. COLLECTIVE DEFENDANTS refused to accommodate PLAINTIFF and declined to engage in the interactive process.

175. Most certainly, INDIVIDUAL DEFENDANTS were aware of DEFENDANT LOGAN'S obligations to engage in an interactive process and to assess whether they could accommodate PLAINTIFF.

176. INDIVIDUAL DEFENDANTS knew or should have known of their obligations to accommodate PLAINTIFF under the law.

177. COLLECTIVE DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

178. COLLECTIVE DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities and/or the need for an FMLA qualifying leave.

179. COLLECTIVE DEFENDANTS had no good-faith business justification to terminate

PLAINTIFF.

180. INDIVIDUAL DEFENDANTS are liable for aiding and abetting the discriminatory/retaliatory conduct of their Principal, DEFENDANT LOGAN.

181. COLLECTIVE DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of his disabilities.

182. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails. PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

183. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

**AS A FIFTH CAUSE OF ACTION FOR *RETALIATION*
UNDER THE NEW YORK STATE EXECUTIVE LAW**
*(Against All Defendants)*

184. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

185. New York State Executive Law § 296(7) provides that: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

186. COLLECTIVE DEFENDANTS violated the section cited herein.

187. PLAINTIFF had a qualifying disability.

188. PLAINTIFF was qualified to perform her duties with an appropriate workplace

24

accommodation.

189. COLLECTIVE DEFENDANTS did not subject non-disabled employees to the same or similar hostility or harassment.

190. COLLECTIVE DEFENDANTS engaged in an unlawful discriminatory practice by retaliating against PLAINTIFF because of her disabilities and/or having a condition that qualified for FMLA leave.

191. Most certainly, INDIVIDUAL DEFENDANTS were aware of DEFENDANT LOGAN'S obligations to engage in an interactive process and to assess whether they could accommodate PLAINTIFF.

192. INDIVIDUAL DEFENDANTS knew or should have known of their obligations to accommodate PLAINTIFF under the law.

193. INDIVIDUAL DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

194. COLLECTIVE DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities and/or for engaging in protected activity.

195. COLLECTIVE DEFENDANTS had no good-faith business justification to terminate PLAINTIFF.

196. But for PLAINTIFF'S disabilities and/or engagement in protective activities, COLLECTIVE DEFENDANTS would not have terminated her.

197. INDIVIDUAL DEFENDANTS are liable for aiding and abetting the discriminatory/retaliatory conduct of their Principal, DEFENDANT LOGAN.

198. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and

25

other compensation which such employment entails. PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

199.   As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

**AS A SIXTH CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* UNDER THE NEW YORK STATE HUMAN RIGHTS LAW** *(Aider and Abettor Liability Against INDIVIDUAL DEFENDANTS)*

200.   PLAINTIFF repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this complaint.

201.   New York State Executive Law § 296(6) provides that: "It shall be an unlawful discriminatory practice for any person to **aid, abet**, incite, compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

202.   INDIVIDUAL DEFENDANTS violated the section cited herein as set forth and was directly involved in the discriminatory and retaliatory actions about which PLAINTIFF complains herein.

203.   INDIVIDUAL DEFENDANTS utilized their positions/statuses as managers, supervisors, and/or agents of DEFENDANT LOGAN to subject PLAINTIFF to *inter alia,* disability discrimination and retaliation once they were informed or became aware that she had an FMLA qualifying condition.

204.   But for INDIVIDUAL DEFENDANTS' management positions, INDIVIDUAL DEFENDANTS would not have been able or authorized to assist DEFENDANT LOGAN in continuing the discriminatory treatment of PLAINTIFF.

205.   INDIVIDUAL DEFENDANTS, acting pursuant to their authorities, ignored

26

DEFENDANT LOGAN'S own policies, procedures, and rules (if any) regarding discriminatory behavior in the workplace.

206. At all times, INDIVIDUAL DEFENDANTS were aware of their obligations to stop, prevent, investigate, and correct discriminatory practices against PLAINTIFF.

207. INDIVIDUAL DEFENDANTS are individually liable for aiding and abetting the discriminatory actions of his employer, DEFENDANT LOGAN.

208. COLLECTIVE DEFENDANTS had no good faith business justification for their actions against PLAINTIFF.

209. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails. PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

210. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

### AS A SEVENTH CAUSE OF ACTION FOR *DISCRIMINATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
*(Against All Defendants)*

211. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

212. The Administrative Code of the City of New York § 8-107(1) provides that

> It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, **disability**, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in

27

compensation or in terms, conditions or privileges of employment.

213. COLLECTIVE DEFENDANTS violated the section cited herein.

214. PLAINTIFF was qualified to perform her duties with an appropriate workplace accommodation.

215. But for PLAINTIFF'S disabilities and/or PLAINTIFF'S FMLA qualifying condition, COLLECTIVE DEFENDANTS would not have terminated PLAINTIFF'S employment.

216. PLAINTIFF advised COLLECTIVE DEFENDANTS that she had disabilities and/or COLLECTIVE DEFENDANTS were aware that PLAINTIFF had an FMLA qualifying condition.

217. COLLECTIVE DEFENDANTS refused and declined to engage in the interactive process.

218. Most certainly, INDIVIDUAL DEFENDANTS were aware of DEFENDANT LOGAN'S obligations to engage in an interactive process and to assess whether they could accommodate PLAINTIFF.

219. INDIVIDUAL DEFENDANTS knew or should have known of their obligations to accommodate PLAINTIFF under the law.

220. COLLECTIVE DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

221. COLLECTIVE DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities and/or PLAINTIFF'S FMLA qualifying condition.

222. COLLECTIVE DEFENDANTS had no good-faith business justification to terminate PLAINTIFF.

223. INDIVIDUAL DEFENDANTS are liable for aiding and abetting the discriminatory/retaliatory conduct of their Principal, DEFENDANT LOGAN.

28

224. COLLECTIVE DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of his disabilities.

225. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails. PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

226. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

### AS AN EIGHTH CAUSE OF ACTION FOR *RETALIATION* <br> UNDER THE NEW YORK CITY ADMINISTRATIVE CODE <br> *(Against All Defendants)*

227. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

228. The New York City Administrative Code §8-107(7) provides that: "It shall be unlawful discriminatory practice for an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . .".

229. COLLECTIVE DEFENDANTS engaged in an unlawful discriminatory practice in violation of NYCHRL by retaliating against PLAINTIFF because of her disabilities and for having an FMLA qualifying condition.

230. PLAINTIFF was qualified to perform her duties with appropriate workplace accommodation.

231. But for PLAINTIFF'S disabilities and/or having an FMLA qualifying condition,

COLLECTIVE DEFENDANTS would not have terminated PLAINTIFF'S employment.

232. PLAINTIFF advised COLLECTIVE DEFENDANTS that she had disabilities, and COLLECTIVE DEFENDANTS were on notice that PLAINTIFF had an FMLA qualifying condition.

233. COLLECTIVE DEFENDANTS refused to accommodate PLAINTIFF and declined to engage in the interactive process.

234. Most certainly, INDIVIDUAL DEFENDANTS were aware of DEFENDANT LOGAN'S obligations to engage in an interactive process and to assess whether they could accommodate PLAINTIFF.

235. INDIVIDUAL DEFENDANTS knew or should have known of their obligations to accommodate PLAINTIFF under the law.

236. COLLECTIVE DEFENDANTS refused to attempt to assist and/or accommodate PLAINTIFF in accord with their obligations as managers and supervisors.

237. COLLECTIVE DEFENDANTS' conduct against PLAINTIFF was motivated, in whole or in part, by PLAINTIFF'S disabilities and/or engagement in protected activities.

238. COLLECTIVE DEFENDANTS had no good-faith business justification to terminate PLAINTIFF.

239. INDIVIDUAL DEFENDANTS are liable for aiding and abetting the discriminatory/retaliatory conduct of their Principal, DEFENDANT LOGAN.

240. COLLECTIVE DEFENDANTS engaged in an unlawful discriminatory practice by terminating PLAINTIFF because of her disabilities.

241. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and

other compensation which such employment entails. PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

242. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

**AS A NINTH CAUSE OF ACTION FOR *DISCRIMINATION/RETALIATION* UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
*(Aider and Abettor Liability against INDIVIDUAL DEFENDANTS)*

243. PLAINTIFF repeats, reiterates, and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

244. The New York City Administrative Code § 8-107(6) provides that: "It shall be unlawful discriminatory practice for any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

245. INDIVIDUAL DEFENDANTS violated the section cited herein as set forth and was directly involved in the discriminatory and retaliatory actions about which PLAINTIFF complains herein.

246. INDIVIDUAL DEFENDANTS utilized their positions/statuses as managers, supervisors, and/or agents of DEFENDANT LOGAN to subject PLAINTIFF to *inter alia,* disability discrimination and retaliation once they were informed of her disability and/or were on notice that she had an FMLA qualifying condition.

247. But for INDIVIDUAL DEFENDANTS' management positions, INDIVIDUAL DEFENDANTS would not have been able or authorized to assist DEFENDANT LOGAN in continuing the discriminatory treatment of PLAINTIFF.

248. INDIVIDUAL DEFENDANTS, acting pursuant to their authorities, ignored

31

DEFENDANT LOGAN'S own policies, procedures, and rules (if any) regarding discriminatory behavior in the workplace.

249. At all times, INDIVIDUAL DEFENDANTS were aware of their obligations to stop, prevent, investigate, and correct discriminatory practices against PLAINTIFF.

250. INDIVIDUAL DEFENDANTS are individually liable for aiding and abetting the discriminatory actions of her employer, DEFENDANT LOGAN.

251. COLLECTIVE DEFENDANTS had no good faith business justification for their actions against PLAINTIFF.

252. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered a loss of income, the loss of a salary, loss of bonuses, loss of benefits, loss of employment, and other compensation which such employment entails. PLAINTIFF has also suffered future pecuniary losses, special damages, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

253. As such, PLAINTIFF is entitled to the maximum amount allowed under this law.

## JURY DEMAND

254. PLAINTIFF requests a jury trial.

**WHEREFORE**, PLAINTIFF respectfully requests a judgment:

A. Declaring that COLLECTIVE DEFENDANTS engaged in unlawful employment practices prohibited by the ADA, FMLA, NYSHRL, and NYCHRL, and in that COLLECTIVE DEFENDANTS discriminated against PLAINTIFF on the basis of her disabilities and request for a disability accommodation;

B. Awarding damages to PLAINTIFF for all lost wages and benefits resulting from

COLLECTIVE DEFENDANTS' unlawful discrimination and retaliation and to otherwise

make her whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding PLAINTIFF compensatory damages for mental, emotional, and physical injury,

distress, pain and suffering, and injury to her reputation in an amount to be proven;

D. Awarding PLAINTIFF punitive damages;

E. Awarding PLAINTIFF attorneys' fees, costs, disbursements, and expenses incurred in the

prosecution of the action; and

F. Awarding PLAINTIFF such other and further relief as the Court may deem equitable, just,

and proper to remedy the COLLECTIVE DEFENDANTS' unlawful employment

practices.

Dated: Garden City, New York
       July 17, 2025

**PHILLIPS & ASSOCIATES,**
**Attorneys at Law, PLLC**


    /S/ *Alexandria Jean-Pierre*
By:   Alexandria Jean-Pierre, Esq.
*Attorneys for Plaintiff*
585 Stewart Avenue, Suite 430
Garden City, New York 11530
T: (212) 248-7431
F: (212) 901-2107
ajean-pierre@tpglaws.com

33